A. M. Forbes Cartage Company, Defendant in Error, v. Grand Trunk Western Railway Company, Plaintiff in Error.

### Gen. No. 15,558.

1. MUNICIPAL COURT—*what essential to review.* A judgment of the Municipal Court in a cause tried without a jury is reviewable in cases of the fourth class as to questions of law in the absence of propositions of law having been submitted.

2. COMMON CARRIERS—*when shipper bound by restrictions.* If the plaintiff shipper offer the contract of shipment in evidence in support of his claim for damages he becomes estopped to deny his assent to the provisions of such contract.

Tort. Error to the Municipal Court of Chicago; the Hon. A. J. COWING, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed June 16, 1911.

L. L. SMITH, for plaintiff in error.

MATHER & HUTSON, for defendant in error.

MR. JUSTICE BALDWIN delivered the opinion of the court.

Defendant in error brought an action of the fourth class in the Municipal Court of Chicago against plaintiff in error to recover damages to a carload of horses shipped from Chicago to Augusta, Maine, in December, 1907. The cause was tried before the court, who found against defendant and entered judgment for $268. It is here contended that the finding and judgment are contrary to the law and evidence.

Counsel for defendant in error contends that, where no exception to the judgment of the trial court is preserved, and where the record contains no propositions of law, the Appellate Court will affirm the judgment of the court below as a matter of course, and in support of this proposition they cite Farris v. B. & O. S. W. Ry., 143 Ill. App. 208. It is sufficient answer to this contention to say that it expressly appears upon page 51 of the Record, that the defendant did enter its exception to the judgment herein. And, further, we do not understand that it is necessary to submit propositions of law in cases of the fourth class in the Municipal Court to enable this court to review its judgments. See paragraph 6, section 23 of the Municipal Court Act of 1907.

Counsel for defendant in error also contend that the assignments of error made by plaintiff in error are so much lacking in particularity that this court might properly refuse to consider them. We do not think this contention well founded.

From the record, it appears that on the 7th day of December, 1907, defendant in error, being then engaged in heavy trucking business in Chicago, by its agent, Mr. Fred Hayward, arranged with the Chicago agent for plaintiff in error for the shipment of a carload of twenty horses, over its line, to the order of said Hayward, at Augusta, Maine. When the stock was loaded upon the car, a written contract was entered into between the parties, dated on that date, which acknowledged the receipt by the carrier of the horses in question, and stated that the stock was received for transportation upon the terms in said contract mentioned, which were therein agreed to by the shipper as just and reasonable. The first of these conditions in the contract provided that the rate fixed for the transportation of these animals was the lower published tariff rate, based upon the express condition that the carrier assumed liability on the live-stock to the extent only of a certain agreed valuation, upon which valuation the rate charged is based, and beyond which valuation neither the carrier nor any connecting carrier should be

450     APPELLATE COURTS OF ILLINOIS.

A. M. Forbes Cartage Co. v. G. T. R. Co., 162 Ill. App. 448.

liable in any event, and it limited the value of horses or mules shipped therein to not exceeding $100 each.

Certain clauses of the contract read as follows:

"Third. That the said shipper is, at his own sole risk and expense, to load and take care of, and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload same, and neither said carrier nor any connecting carrier, is to be under any liability or duty with reference thereto, except in the actual transportation of the same.

"Fourth. That the said shipper is to inspect the body of the car or cars in which said stock is to be transported and satisfy himself that they are sufficient and safe and in proper order and condition, and said carrier or any connecting carrier shall not be liable, on account of any loss of or injury to said stock happening by reason of any alleged insufficiency in or defective condition of the body of said car or cars.

"Fifth. That said shipper shall see that all doors and openings in said car or cars are at all times so closed and fastened as to prevent the escape therefrom of any of the said stock, and said carrier or any connecting carrier shall not be liable on account of the escape of any of the said stock from said car or cars.

"Seventh. That in the event of any unusual delay or detention of said live stock, caused by the negligence of said carrier, or its employees, or its connecting carriers, or their employees, or otherwise, the said shipper agrees to accept as full compensation for all loss or damage sustained thereby the amount actually expended by said shipper, in the purchase of food and water for the said stock, while so detained. That no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the said shipper, unless a claim for such loss or damage shall be made in writing verified by the affidavit of the said shipper or his agent, and delivered to the Maine Central Agent of the said carrier at his office in Augusta, Me., within five days from the time said stock is removed from said car or cars; and that if any loss or damage occurs upon the line of a connecting

carrier, then such carrier shall not be liable unless a claim shall be made in like manner, and delivered in like time, to some proper officer or agent of the carrier on whose line the loss or injury occurs.

"Eighth. That whenever the person or persons accompanying said stock under this contract, to take care of the same, shall leave the caboose and pass over or along the cars or track of said carrier, or of connecting carriers, they shall do so at their own sole risk of personal injury, from whatever cause."

The tenth clause of the contract was to the effect that the shipper thereby acknowledged that it had the option of shipping the therein described live stock at a higher freight rate and thereby receiving the security of the liability of the carrier and the connecting transportation companies as common carriers, but that the shipper had voluntarily decided to ship its stock under this contract at the reduced rate of freight therein mentioned.

This contract was signed by the carrier and by the shipper, per Hayward, who was designated as "shipper's agent."

When the car reached its destination at Augusta, Maine, one horse from the number was missing, which the shipper claimed was worth approximately $175, and there was also said to be missing eighteen halters, which were said to be worth about $1 each. Hayward testified that when the horses were loaded in Chicago, their feed was put in the car, and halters on the horses, and that when the car arrived at Augusta, he was notified by an agent of the Maine Central Railroad, and he unloaded the horses. He says the horses were "gaunted up," and that some of them had colds and were "off their feed." He thinks they were eight days on the road, while, in his opinion, the car should have reached Augusta within five days instead of eight, and in general terms he says, he thinks several of the horses were depreciated in value by the delay, as much in the aggregate as $200.

Upon this testimony the court below originally entered a finding in favor of the shipper for $393, that being the entire amount claimed, but upon a motion for a new trial re-

452        Appellate Courts of Illinois.

A. M. Forbes Cartage Co. v. G. T. R. Co., 162 Ill. App. 448.

considered his finding, and reduced it to $268, evidently upon the basis of allowing $175 for the lost animal, $18 for the halters, and $100 for the depreciation in the value of the horses. A letter from the carrier was admitted, over objection, authorizing a settlement of the claim for $175.

Defendant in error contends that its suit brought in the Municipal Court was not an action in assumpsit upon the contract set out, but was in tort, and, as alleged in its statement of claim, was "for damages caused by the defendant to a carload of horses shipped by the plaintiff over the road of the defendant, for the escape and loss of one horse and for the loss of harness and parts thereof, all during the said shipment, all of said property being delivered by the plaintiff to the defendant for transportation on or about the 7th day of December, 1907, from Chicago to Augusta, Maine, for certain charges in that behalf paid by the plaintiff to the defendant."

However, plaintiff offered the contract in evidence in support of its claim for damages, and we think that, after offering the contract, and making it a part of its case, it was estopped from denying its assent to the provisions of the contract in question. If it desired to avoid being bound by them, it should have pursued a different course in the matter. 3 Hutchinson on Carriers, sec. 1332.

It is clear that it was contemplated by the contract that the shipper should send some person to accompany the stock who should feed and care for it while in transit, and who should prevent the escape of any of the horses from the car; and that a man was sent by the shipper for that purpose. The contract further provided that, in the event of any unusual delay the carrier should be liable only for such amount as was actually expended by the shipper in the purchase of food and water for the stock, while thus detained, and it was also intended by the contract to fix a maximum valuation for the horses in said shipment at not exceeding $100 each.

In the Municipal Court written pleadings are not required, and in this case it is not altogether clear whether the action was, as claimed by defendant, one of assumpsit upon the

contract, or, as claimed by plaintiff, in tort for negligence. If the former, then its violation by the shipper must be established, and if the latter, then the negligence which resulted in the injury should be specifically shown.

The testimony in the case seems to us exceedingly indefinite and uncertain. As to the delay *en route,* the only evidence tending to show delay was the Hayward statement that he *thought* the time occupied was about eight days, though he would not be positive about it, and that he thought "five days would be good time." And if it be true, as claimed by the shipper, that the horses, when received at Augusta, were "gaunted up," had bad colds, and were "off their feed," it would still be necessary for the shipper to show by competent evidence that this condition was due to the negligence of the carrier, and that was not done. The testimony as to the extent of the damages is altogether too indefinite. The witness, Hayward, being asked how the condition of the horses would affect their market value on the day of their arrival in Augusta, said, "well, now, there was one horse there that I *presume* it would affect his market value to the amount of *probably* fifty dollars; another one *perhaps* $25, and some of them it really did not affect it much, if any. I should judge *probably*—I never thought over that, but I should judge *probably* there was six or seven horses that really their market value was damaged." And in response to further questioning by counsel for the shipper, who asked whether he had any recollection as to how much the depreciation would have been, the witness answered, "Not thinking of this coming up, this question, I didn't have the figures to refresh my memory about their value, *as near as I can say,* there was $200 difference; something like that." There was no testimony whatever as to the condition of the horses at the time they were shipped at Chicago. And, as to the value of the horse which was lost, the witness testified with considerable uncertainty and indefiniteness, stating that "we figured him here at this end at $175." If the shipper sues on the contract he will be bound by its terms and limitations; if, however, he sues in tort for the negligence of the carrier

he must prove (1) the negligence, (2) that on account thereof the shipper was injured, and (3) the amount of such injury. This last cannot be shown as the mere conclusion of the witness.

While from the record it seems probable that the plaintiff should recover some amount, yet we cannot regard the testimony below as sufficient to justify the verdict and judgment of the court, and the judgment will be reversed and the cause remanded for another trial.

*Reversed and remanded.*